UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

BRYANT PRODUCTS, INC., and
AIRFORM, LLC

        Plaintiffs,

        v.                                Case No. 03-C-0381

POMACON, INC.,
OMNI METALCRAFT CORPORATION,
RONALD W. WINTER,
VISTA PROPERTIES, INC.,
PUNCHING CONCEPTS, INC.

        Defendants.

---

ORDER DENYING THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
(DOC. # 42).

---

        This case comes before the court on the plaintiffs' second amended complaint and request for a preliminary injunction alleging patent infringement and request for a preliminary injunction. According to the plaintiffs, on May 22, 2001, the United States Patent and Trademark Office assigned to Bryant Products, Inc., Patent No. 6,233,991, entitled "Apparatus and Method for Spin Forming a Tube" (the '991 Patent). Despite Bryant's patent, the plaintiffs proffer that defendant PoMaCon, Inc., made a spin-forming machine (the "Subject Machine") which infringes apparatus claims one through four (1-4) and method claims thirteen through seventeen (13-17) of the '991 Patent. (P.I. Br. at 2.) Consequently, the plaintiffs filed the pending preliminary injunction motion seeking to enjoin the defendants from (1) further infringement of the '991 Patent within the United States, its territories and possessions; (2) further infringement in the form of any use of the Subject Machine within the United States, its territories and possessions, or anywhere in the world for purposes of

importing formed tubes; (3) further manufacture or sale of the Subject Machine or any machine like the Subject Machine; and (4) any other infringing conduct. (Proposed Findings of Facts and Conclusion of Law at 9.)

From the beginning of this litigation, the defendants submit that they "have not infringed any valid, enforceable claim of the ['991] patent" and that "[t]he ['991] patent is invalid for failure to meet the conditions of patentability as set forth in Title 35 of the United States Code." (Second Am. Answer at 5.) Acknowledging that a "preliminary injunction is an extraordinary remedy," the defendants contend that the court should not issue an injunction because the plaintiffs are unlikely to succeed on the merits. (Opp'n Br. at 20.) For the reasons explained herein, the court will deny the motion.

## I. Procedural History

Bryant commenced this patent infringement lawsuit against PoMaCon on April 30, 2003. Twenty-three days later, Bryant amended the complaint and added defendants Ronald W. Winter (Winter) and Omni Metalcraft Corporation (Omni). Both Omni and Winter filed their answer to the amended complaint on June 24, 2003, and PoMaCon filed its answer to the same on July 25, 2003. On May 7, 2004, Bryant filed a second amended complaint to add AirForm LLC as a plaintiff and Vista Properties, Inc. (Vista) and Punching Concepts, Inc. (PCI) as defendants. Collectively, the defendants filed an answer to the second amended complaint on June 3, 2004. That same day, the plaintiffs filed the pending motion, a brief with exhibits in support of the motion (P.I. Br.) and proposed findings of facts and conclusions of law.

In opposition to the motion, the defendants filed a brief with exhibits (Opp'n Br.) and thereafter the plaintiffs filed a reply brief with exhibits and revised proposed findings of facts and conclusions of law. With leave from the court, the defendants filed a supplemental

brief with exhibits and the plaintiffs filed the same in support of their respective positions on the motion. Again, with leave from the court, the plaintiffs filed a brief with exhibits based on what they characterized as "newly discovered evidence" and the defendants submitted a response with exhibits.

## II. Jurisdictional Facts

### A. The Parties

Although both plaintiffs are Wisconsin entities that maintain their principal place of business in Ixonia, Jefferson County, Wisconsin, Bryant is a corporation and AirForm is a limited liability company. (Thimmel Decl. ¶¶ 1, 2.) Defendant PoMaCon is a closely-held corporation organized under Ohio law that maintains its principal place of business in Brunswick, Ohio. (Second Am. Answer ¶ 3.) All of the remaining corporate defendants are closely-held Michigan corporations with their principal place of business in Alpena, Michigan. (*Id.* ¶¶ 3, 6, 7.) Lastly, defendant Winter is a Michigan resident who holds an ownership interest in all the corporate defendants. (*Id.* ¶ 4.)

### B. Jurisdiction

Because this dispute arises under the Patent Laws of the United States, 28 U.S.C. §§ 1331 and 1338(a), vest this court with original jurisdiction. 28 U.S.C. §§ 1331, 1338(a).[1] Relying on a stream of commerce theory, the plaintiffs contend that this court has personal jurisdiction over all the defendants. (Second Am. Compl. ¶ 9.) In other words, the plaintiffs claim that because "all [the] defendants directly or indirectly through corporate

---

[1] Congress delineated jurisdiction over cases involving federal question in 28 U.S.C. § 1331. The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2004). Whereas, 28 U.S.C. § 1338(a) states that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, . . . . Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." 28 U.S.C. § 1338(a) (2004).

3

affiliation or by placing a product in the stream of commerce, do or have done business in this district[,]" the court has personal jurisdiction over the defendants. (*Id.*) However, the defendants contend that this court lacks personal jurisdiction over them by raising this assertion as their first affirmative defense. (Second Am. Answer at 5.) Similarly, the plaintiffs offer that under 28 U.S.C. §§ 1400(b) and §1391(b) and (c), venue in this judicial district is proper.[2] (Second Am. Compl. ¶ 9.) But the defendants argue that venue in this district is improper. (Second Am. Answer ¶ 9.)

Indeed, the defendants preserved both affirmative defenses by asserting in their answer to the second amended complaint that the court lacks personal jurisdiction over them and venue in this district is improper. (*Id.* at 5.) Despite these assertions, the defendants elected not to file a motion under Rule 12(b)(2) and (3) and/or seek a judgment on the pleadings. *See* FED. R. CIV. P. 12(b)(2), (3), 12(c). Instead, since the commencement of this

---

[2]Under 28 U.S.C. § 1400 (b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Pursuant to 28 U.S.C. § 1391(b),

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the actions may otherwise be brought.

28 U.S.C. § 1391(b) (2004). Under 28 U.S.C. § 1391(c),

> a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c) (2004).

4

action approximately two years ago, the defendants have actively participated in litigation of the merits and have even filed a summary judgment motion.

In *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, the district court held "that although the defendants pled lack of jurisdiction in their answer, they had waived the defense by extensive participation in the merits of the lawsuit without raising the defense affirmatively." *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296 (7th Cir. 1993). Relying on Rule 12(h)(1) in affirming the district court's decision, the United States Court of Appeals for the Seventh Circuit noted that by asserting the defense in their answer, waiver did not occur. *Id.* But the Seventh Circuit instructed that the privileges Rule 12(h)(1) extends to the defendants "may be waived by 'formal submission in a cause, or by submission through conduct.'" (internal citations omitted) *Id.* at 1297.

Applying this reasoning to the defendants in *Continental*, the Seventh Circuit found that

> the defendants fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction. They participated in lengthy discovery, filed various motions and opposed a number of motions filed by the bank. While the defendants literally complied with Rule 12(h), "they did not comply with the spirit of the rule, which is 'to expedite and simplify proceedings in Federal Courts.'" [Accordingly,] [t]he district court could properly conclude that the defendants' delay in urging this threshold issue manifests an intent to submit to the court's jurisdiction.

*Id.* (internal citations omitted.)

Here, like the defendants in *Continental*, the defendants raised the affirmative defenses of lack of personal jurisdiction and improper venue in their answer to the second amended complaint. Notwithstanding these claims, the defendants have failed to affirmatively pursue these defenses by filing a motion to dismiss on either basis. Instead, they have spent

5

the past two years, participating in discovery, status conferences, responding to the plaintiffs' motions and moving the court for summary judgment on the basis of patent invalidity. Although the defendants complied with Rule 12(h), "they did not comply with the spirit of the rule." *Id.* Consequently, this court finds that the defendants waived their affirmative defenses through their conduct and thus submit to this court's jurisdiction. *See id.*

### III. Findings of Facts

Frederick H. Thimmel, Per Carlson, David S. Grupenhagen, Henri T. Nguyen and Hebert L. Franck invented the Apparatus and Method for Spin Forming a Tube, the invention in the '991 Patent. (Brief in Support of P.I. Motion, Ex. 1 at 1.) These inventors assigned their rights in the invention to Bryant, who filed the patent application on August 1, 2000. (*Id.*) The application advises that the

> . . . object of the present invention [is] to provide an improved apparatus and method for [the] manufactur[ing] of tapered rollers from cylindrical tubing.
>
> Another object of this invention is to provide an improved apparatus and method for manufacture of tapered rollers which overcomes shortcomings and problems of the prior art, including those referred to above.
>
> Another object of this invention is to provide an improved spin-forming apparatus and method for manufacturing tapered rollers which greatly simplifies the spin-forming of a tube.
>
> Yet another object of the present invention is to provide an improved apparatus for spin-forming tubes and/or selective reduction of tube diameter to form tapered, concave or convex crowns, which are simpler and less expensive than prior art spin-forming apparatus.
>
> Another highly important object of this invention to provide an apparatus for spin-forming a tube that does not require either part-specific dies or any internal or external supports for the tube.

> These and other objects of the invention will be apparent from the disclosure and discussion herein.

(*Id.* at Column 4, Lines 26-51.)

Each of the claims in the '991 patent includes the claim limitation of "predetermined force." (*Id.*) The patent's claims require the rollers to urge with not just force, but predetermined force. (*Id.*) This limitation is contained in both the independent apparatus claims, claims 1 and 8, as "a controller for urging the outer surfaces of the rotatable rollers against the tube with a predetermined force." (*Id.* at Column 10, Lines 41-2; Column 11, Lines 27-8.) The limitation also appears in the sole independent method claim, claim 13, as "urging the rollers against the tube with a predetermined force." (*Id.* at Column 12, Lines 17-18.)

The original patent application did not include the claim limitation of "predetermined force" nor did it contain the term "predetermined force." Instead, the limitation became part of the claims after the patentee filed the original application. Consequently, the original patent application lacks a written description of "predetermined force."

This litigation involves apparatus claims one through four (1-4) and method claims thirteen through seventeen (13-17) of the '991 Patent. Claims one through four read as follows,

> 1. An apparatus for spin forming a tube extending along a longitudinal axis and having first and second ends and an initial, outer diameter, comprising:
>
> a first clamp assembly for removably supporting the first end of the tube;
>
> a second clamp assembly axially spaced from the first clamp assembly for removably supporting the second end of the tube, the tube being free of internal and external supports

7

between the first and second clamp assemblies when supported thereby;

a rotation structure operatively connected to at least one of the clamp assemblies for rotating the tube about the longitudinal axis;

first and second, circumferentially spaced, rotatable rollers having radially outer surfaces for engaging the tube, each rotatable roller rotatable about an axis generally parallel to the longitudinal axis and movable between a first position adjacent to the first clamp assembly and a second position adjacent to the second clamp assembly; and

a controller for urging the outer surfaces of the rotatable rollers against the tube with a predetermined force and for controlling movement of the rotatable rollers between the first and second positions as the outer surfaces of the rotatable rollers are urged against the tube so as to alter the outer diameter of the tube.

2. The apparatus of claim 1 wherein the rotation structure is interconnected to the first clamp assembly and wherein the second clamp assembly is supported on a carriage, the carriage movable along the longitudinal axis between a first open position wherein the tube may be positioned between the clamp assemblies and a second clamping position wherein the tube is supported by the clamp assemblies.

3. The apparatus of claim 2 wherein the carriage is supported on and travels along first and second rails, the rails being generally parallel to each other and to the longitudinal axis.

4. The apparatus of claim 1 wherein at least one of the clamp assemblies is free to move axially away from the other clamp assembly to accommodate any increase in length of the tube in response to the altering of the outer diameter of the tube.

(*Id.* at Column 10, Lines 20-63, as corrected April 23, 2002.)

The method claims, thirteen through seventeen, read as follows,

13. A method of spin forming a tube extending along a longitudinal axis and having first and second ends and an initial, outer diameter, comprising the steps of:

8

rotating the tube about the longitudinal axis, the tube being free of internal and external supports between the ends thereof;

providing first and second rollers which are rotatable about corresponding axis generally parallel to the longitudinal axes;

urging the rollers against the tube with a predetermined force; and

moving the rollers between the first and second ends of the tube so as to alter the outer diameter of the tube.

14. The method of claim 13 wherein the rollers includes outer surface free of recesses.

15. The method of claim 13 comprising the additional steps of:

providing first and second space clamp assemblies; and

supporting each end of the tube with a corresponding clamp assembly.

16. The method of claim 15 comprising the additional step of urging the clamp assemblies toward each other so as to capture the tube there between.

17. The method of claim 16 comprising the additional step of allowing at least one of the clamp assemblies to move freely away from the other clamp assembly to accommodate any increase in length of the tube in response to the altering of the outer diameter of the tube.

(*Id.* at Column 12, Lines 6-37, as corrected April 23, 2002)

### IV. Preliminary Injunction Standard

A preliminary injunction is an equitable remedy available in the sound discretion of the court. *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983); *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d.1567, 1570 (Fed. Cir. 1991). To

9

obtain a preliminary injunction, the movant bears the burden of establishing: (1) a reasonable likelihood of success on the merits; (2) that the movant will suffer irreparable harm unless the court grants the injunction; (3) the injury to the movant outweighs the damage which the injunction may cause the opponents; and (4) that the issuance of the injunction would not adversely affect the public's interest. *T.J. Smith & Nephew, Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 647 (Fed. Cir. 1987).

Although not one of the four factors is dispostive, "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004). All of the factors are weighed using "the 'sliding scale' approach: the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (internal citations omitted).

The rule is that "[t]he standards applied to the grant of a preliminary injunction are no more nor less stringent in patent cases than in other areas of the law." *H.H. Robertson Co. v. United Steel Deck Inc.*, 820 F.2d 384, 387 (Fed.Cir. 1987); *see also Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed.Cir. 1985). Nevertheless, in patent cases, a "preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *Nat'l Steel Car, Ltd.*, 357 F.3d at 1324 (*quoting Intel Corp. v. ULSI Sys. Tech., Inc.*, 955 F.2d 1566, 1569 (Fed. Cir. 1993). As the Federal Circuit advised,

> [t]he grant of a preliminary injunction does not require that infringement be proved beyond all question, or that there be no

> evidence supporting the viewpoint of the accused infringer. . . .
> The grant turns on the likelihood that [movant] will meet its burden
> at trial of proving infringement.

*H.H. Robertson*, 820 F.2d at 389; see *Atlas Powder*, 773 F.2d at 1233.

### V. Discussion

The parties' submissions show that there is a single claim interpretation issue in the present case, namely, the meaning of "predetermined force" as used in the claims of the '991 Patent. In other words, to determine whether the Subject Machine is infringing a claim of the '991 patent, this court must first properly construe each claim to determine its scope and meaning. *See Nike Inc. v. Wolverine World Wise, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). Then the court must take the claim as properly construed and compare it to the accused device. *Id.*

For purposes of claim construction, this court must meaningfully construe all limitations in a claim, *Lantech, Inc. v. Keip Machine Co.*, 32 F.3d 542 (Fed. Cir. 1994), and give the words in the claim "their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). As with all rules, there is an exception. In the event that the inventor elects "to be his own lexicographer and use terms in a manner other than their ordinary meaning," *id.*, the patentee must clearly delineate the special meaning assigned to the term in the patent specification. *Markman v. Westview Instruments*, 52 F.3d 967, 980 (Fed. Cir. 1985), *aff'd*, 517 U.S. 370 (1996). But when the patent specification does not assign a special meaning to a term, the court should define the term in accordance with its ordinary dictionary definition. *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).

Here, the plaintiffs failed to include a written description of "predetermined force" in their original patent application. Similarly, the amended patent application does not contain

a written description of the term "predetermined force." Because the court cannot eliminate the term from the patent, this court must give the term "predetermined" its common meaning. *See Nike Inc. v. Wolverine World Wise, Inc.*, 43 F.3d at 646; *see also Tex. Digital Sys. Inc. v. Telegenix Inc.*, 308 F.3d at 1202-03 ("[d]ictionaries, encyclopedias and treaties, publicly available at the time the patent is issued, are objective resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims by those of skill in the art."); *K-2 Corp. v. Solomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("[c]ourts do not rewrite claims; instead we give effect to the terms chosen by the patentee.")

The ordinary meaning of the term "predetermined" is "to determine beforehand." *Webster's Ninth New Collegiate Dictionary* at 926 (1989); *Ferguson Beauregard v. Mega Systems, LLC*, 350 F.3d 1327, 1340 (Fed. Cir. 2003). Contrary to the plaintiffs' suggestion, "force" and "predetermined force" are not synonyms. If the term "force" is assigned its ordinary meaning, it means "strength or energy exerted or brought to bear: cause of motion or change: active power." *Webster's Ninth New Collegiate Dictionary* at 482 (1989). Because these two terms maintain separate and distinct meanings, the patentee's unilateral decision to use the term "predetermine force" and not assign it a special meaning, means the ordinary dictionary definition controls.

Accordingly, the "relevant question is whether the accused machine "predetermines" or determines beforehand the force with which the rollers are applied against the tube. . . ." (Opp'n Br. at 4.) Brian Post avers that, "[i]n the [S]ubject [M]achine, the rollers are not urged against the tube with a predetermined force. No force is ever determined, before or after the rollers are urged against the tube. Rather the subject machine uses only position control." (*Id.* at Ex. 1,¶ 4. On the other hand, the '991 patent requires by its

12

expressed terms in both the independent apparatus claims, claims 1 and 8, "a controller for urging the outer surfaces of the rotatable rollers against the tube with a *predetermined force*." (*Id.* at Column 10, Lines 41-2; Column 11, Lines 27-8.) (emphasis added). Even the sole independent method claim, claim 13, requires an "urging [of] the rollers against the tube with a *predetermined force*." (emphasis added) (*Id.* at Column 12, Lines 17-18.) Despite the defendants' assertion that the Subject Machine does not use predetermined force to operate, the plaintiffs fail to offer any evidence to refute the same.

In view of the above, there is not a likelihood that plaintiffs will prevail at trial in showing that the defendants' Subject Machine and use of the same infringes the '991 Patent. Now, therefore,

IT IS ORDERED that the plaintiffs' Motion for Preliminary Injunction (Doc. # 42) is denied.

Dated at Milwaukee, Wisconsin, this 21st day of June, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge