UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

BRYANT PRODUCTS, INC.,
AIRFORM, LLC,

        Plaintiffs,

        v.                         Case No. 03-C-0381

POMACON, INC.,
OMNI METALCRAFT CORPORATION,
RONALD W. WINTER,
VISTA PROPERTIES, INC.,
PUNCHING CONCEPTS, INC.

        Defendants.

---

DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT OF U.S. PATENT
NO. 6,233,991 (DOC #149); DENYING WITHOUT PREJUDICE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON INVALIDITY OF U.S. PATENT
NO. 6,233,991 (DOC #149); DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT ON INFRINGEMENT OF U.S. PATENT NO. 6,233,991
(DOC #155); and DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT ON VALIDITY AND ENFORCEABILITY OF U.S.
PATENT NO. 6,233,991 (DOC #155)

        In their second-amended Complaint (Doc. #31), plaintiffs, Bryant Products,

Inc. (Bryant) and Airform LLC (Airform), hereinafter collectively referred to as "plaintiffs,"

alleged multiple counts of patent infringement of U.S. Patent No. 6,233,991 (the '991

Patent), which is assigned to Bryant, against defendants PoMaCon, Inc. (PoMaCon), Omni

Metalcraft Corporation (Omni), Ronald W. Winter (Winter), Vista Properties, Inc. (Vista),

and Punching Concepts, Inc. (PCI), hereinafter collectively referred to as "defendants."

Specifically, plaintiffs alleged direct infringement of the '991 Patent, pursuant to 35 U.S.C.

§ 271(a), against PoMaCon, Vista, PCI, and Winter (Compl. ¶¶ 28-33, 40-45, 52-57, and 70-80). Plaintiffs also charged that PoMaCon, Vista, PCI, Omni, and Winter induced the infringement of the '991 Patent, pursuant to 35 U.S.C. § 271(b). (Compl. ¶¶ 34-39, 46-51, and 58-80). Now before the curt are defendants' Renewed Motion for Summary Judgment on non-infringement and invalidity of the '991 Patent, and plaintiffs' Renewed Motion for Summary Judgment on infringement, validity, and enforceability of the '991 Patent.

_Standards for Summary Judgment_

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. _Id._ at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action under consideration, showing that there is a genuine issue for trial. _Id._ at 322-24. In analyzing the existence of a question of fact, the court construes the evidence in the light most favorable to the party opposing the motion. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a _genuine_ issue of _material_ fact for the case to survive. _Id._ at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. _Contreras v. City of Chicago_, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial.

2

*Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the opposing party's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

*Brief Overview of the '991 Patent*

The '991 Patent discloses an apparatus and method for spin-forming a tube for use in a conveyor system for material handling, food-processing, and bulk solids operations. (Pls.' Br. in Supp. of Pls.' Mot. for Summ. J. at 2.) The apparatus (reference numeral 10 in Fig. 1 of the '991 Patent) includes first and second clamp assemblies

3

(approximately indicated by reference numerals 30 and 32 in Fig. 1 of the '991 Patent) which support opposite ends of a tube (reference numeral 12 in Fig. 1 of the '991 Patent). A rotation structure (approximately indicated by reference numerals 26 and 34 in Fig. 1 of the '991 Patent) rotates the tube as a plurality of rollers (reference numerals 40-43 in Fig. 2 of the '991 Patent) engage the outer surface of the tube. The rollers move between the clamp assemblies (i.e., in the directions indicated by arrow 59 in Fig. 1 and by arrow 46 in Fig. 2 of the '991 Patent) to alter the outer diameter of the tube during travel. A controller controls the urging of the rollers against the tube and controls the movement of the rollers between the clamp assemblies.

*Infringement/Non-infringement of the '991 Patent*

There are two steps in a patent infringement case. "The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device." *Kemco Sales, Inc. v. Control Papers Co. Inc.*, 208 F.3d 1352, 1359-1360 (Fed. Cir. 2000) (quoting Streamfeeder, LLC v. Sure-Feed Sys., Inc., 175 F.3d 974, 981 (Fed. Cir. 1999). Claim construction is a question of law, while infringement . . . is a question of fact. *Id.* (citations omitted); *see Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996). Pointedly, "[a] determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Ferguson Beauregard v. Mega Sys., Inc.*, 350 F.3d 1327, 1338 (Fed. Cir. 2003).

An accused product infringes a patent when it contains all of the elements of a patented claim. *See Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989). Conversely, there is no infringement if one of the elements

of the asserted patent claim is not found in the accused product or process. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-78 (Fed. Cir. 1989) (citations omitted). This is known as the All Elements rule. *See id.* The analysis must proceed on an element by element basis. Each element d in a patent claim is deemed material to defining the scope of the patented invention, and thus [the analysis] must be applied to individual elements of the claim, and not to the invention as a whole. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29, 137 L. Ed. 2d 146, 117 S. Ct. 1040 (1997). In the All Elements rule, "element" is used as a limitation of a claim. *See IVAC Corp.*, 885 F.2d at 1578. Therefore, if a claim limitation is not present in the accused product, there can be no infringement. *See Julien v. Zeringue*, 864 F.2d 1569, 1571 (Fed. Cir. 1989) (citations omitted).

"But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing." *Graver Tank & Mfg. Co. V. Linde Air Products Co.*, 339 U.S. 605, 607, 70 S. Ct. 854, 94 L. Ed. 1097 (1950). "Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law." *Id.*

"The doctrine of equivalents evolved in response to this experience." *Id.* at 608. "The essence of the doctrine is that one may not practice a fraud on a patent." *Id.* "A patentee may invoke this doctrine to proceed against the producer of a device 'if it

5

performs substantially the same function in substantially the same way to obtain the same result.'" *Id.* (citation omitted).

In their Renewed Motion for Summary Judgment, the plaintiffs assert infringement of Claims 1-4 and 13-17 of the '991 Patent (Pls.' Renewed Mot. for Summ. J. at 1). To determine whether Claims 1-4 and 13-17 are infringed by the defendants, we must first determine the scope or meaning of Claims 1-4 and 13-17. As stated above, claim construction is a question of law to be decided by the court. After the scope or meaning of Claims 1-4 and 13-17 are determined, the court must read the claims on defendants' accused device, literally and using the doctrine of equivalents, to determine whether infringement exists. Because the determination of infringement is a question of fact, the court must apply the aforementioned standards for summary judgment to conclude, as a matter of law, that the defendants either infringe or do not infringe Claims 1-4 and 13-17 of the '991 Patent.

<u>Claim Construction</u>

According to Federal Circuit case law, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corporation*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (citation omitted). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* "The starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." *Id.* "Importantly, the person of ordinary skill in

6

the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Federal Circuit case law recognizes "that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs." *Id.* at 1316.  "In addition to consulting the specification, [the Federal Circuit has] held that a court should also consider a patent's prosecution history [in claim interpretation], if it is in evidence." *Id.* at 1317 (citations omitted).  "Yet because the prosecution history represents an ongoing negotiation between the [U.S. Patent & Trademark Office ("PTO")] and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Although the Federal Circuit has stressed the importance of "intrinsic evidence" (e.g., the words of the claims themselves, the specification, and the prosecution history) in claim construction, the Federal Circuit has "also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* "However, while extrinsic evidence can shed useful light on the relevant art, . . .  it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (internal quotation marks and citations omitted).

In the present case, the interpretation of only one claim element is in dispute – the term "predetermined force."  "Predetermined force" is used in independent Claim 1 in

7

describing how rotatable rollers are urged against the tube to be spin-formed. Dependent Claims 2-4 also incorporate this term as Claims 2-4 are dependent upon independent Claim 1. In other words, dependent Claims 2-4 include all of the elements in Claim 1 in addition to those in Claims 2-4. Further, the term "predetermined force" is used in independent Claim 13 in describing a method of spin forming a tube including urging rollers against the tube "with a predetermined force." Claims 14-17 also incorporate the term as well as dependent upon independent Claim 13.

The defendants assign the "ordinary meaning" of the term "predetermined force" in its brief supporting the Renewed Motion for Summary Judgment inasmuch as the patent specification does not assign a special meaning to the term. (Defs.' Br. in Supp. of Defs.' Renewed Mot. for Summ. J. at 6.) In doing this, the defendants look to dictionary definitions of "predetermined" and "force" and conclude that "predetermined force" means "to determine—to fix or establish—beforehand the amount of strength or energy exerted or brought to bear by the rollers against the tube." (Defs.' Br. in Supp. of Defs.' Renewed Mot. for Summ. J. at 6.)

On the other hand, the plaintiffs submit that the term "predetermined force" simply means "forces caused by the controller's programmed setting of roller positions (i.e., path) against the tube and the related setting of forming times (i.e., work rates) to properly alter the diameter of the tube being formed." (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 8-9.)

The plaintiffs cite several sources in support of this interpretation of "predetermined force." First, they argue that the '991 Patent provides intrinsic evidence that supports their definition of "predetermined force." Specifically, the plaintiffs argue that

8

the '991 Patent "discloses computer-programming of *roller positions* and *work rates* in roller interaction with a workpiece tube - and that this prior programming by its nature necessarily *pre*-determines forces occurring between the rollers and any given workpiece tube during the tube-shaping operations that follow."  (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 13.)

With respect to disclosure of "roller positions," the plaintiffs cite the text of Claim 1— "a controller . . . for controlling movement of the rotatable rollers between the first and second positions . . . "— and contend that the claim references "position control" and "controlling movement" of the rotatable rollers in doing their work against the workpiece tube.  (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 13-14.)  The plaintiffs also cite to portions of the specification for text supporting the disclosure of roller "positions" and "movements."  Particularly, they refer to column 9, lines 11-17 and 40-49 of the specification:

> Control 90 also controls axial movement of cross slide 36 as indicated in [sic] the arrow 37.  Furthermore, computerized control 90 also controls movement of each of the forming rollers 40-43 toward common axis 28.  Control 90 aids the present invention in forming parts, tapers and grooves economically and efficiently.
> . . .
> Forming rollers 40-43 are guided along path 46 under the control of computerized control 90 such that the outer surfaces 44 of forming rollers 40-43 engage outer surface 48 of tube 12. Thereafter, cross slide 36 moves axially, as indicated by arrow 37, between headstock 26 and tailstock 24.  With forming rollers 40-43 urged against outer surface 48 of tube 12, outer surface 48 of tube 12 is controllably shaped thereby such that the outer diameter of tube 12 is altered.

(Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 14.)  From these portions of the specification of the '991 Patent, the plaintiffs argue that "the '991 Patent discloses the pre-

9

programmed *position guidance* and *movement control* of the forming rollers (i.e., programming of roller *positions* and *work rates*) which accomplish the final tube shape in the desired fashion." (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 15.)

Although the court acknowledges that the "movement" of the forming rollers appears to be adequately disclosed in the specification of the '991 Patent and in Claim 1, the court is not convinced that the specification of the '991 Patent or in the claims themselves, disclose or define the "work rates" of the forming rollers as they shape the tube. The term "work rates" does not appear anywhere in the '991 Patent, nor does the court believe that one of ordinary skill in the art of spin-forming, after reading the specification and claims of the '991 Patent, would understand "position guidance" and "movement control" to be synonymous with programming of roller "positions" and "work rates," as argued by the plaintiffs.

Additionally, the plaintiffs offer that U.S. Patent No. 4,149,235 issued to Froyd et al. (the '235 Patent), which was incorporated by reference into the '991 Patent, includes a disclosure of "rate" in connection with "position control" in a computer numeric control (CNC) device. (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 16.) However, the court believes that one of ordinary skill in the art of spin-forming, after reading the specification and claims of the '991 Patent, would conclude that the reference to the '235 Patent was merely to inform the reader of typical components associated with "computerized controls," rather than an indication or a description of how the particular "computerized controls" disclosed in the '991 Patent functioned. Indeed, the text in column 9, lines 7-11 of the '991 Patent states, "[s]uch computer controls are well-known to those skilled in the art. Generally, such systems are comprised of an input device or a keyboard,

10

a memory, a processor or may be of the type described in U.S. Pat. No. 4,149,235,. . . ."
This reference to the '235 Patent fails to suggest to one of ordinary skill in the art, either
explicitly or implicitly, that the reader should look to the '235 Patent for a description or
explanation of the operation of the "computerized control" of the '991 Patent, or that the
"computerized control" of the '991 Patent functions in the same way (i.e., with the same
inputs and outputs) as the controls incorporated in the CNC device of the '235 Patent. One
of ordinary skill in the art of spin-forming, after reading the specification and claims of the
'991 Patent, could conclude that the "computerized control" disclosed and claimed in the
'991 Patent could utilize a *force input* (i.e., a force value entered into the controller) in
controlling the application of the forming rollers against the workpiece tube in shaping the
workpiece tube.

        Lastly, the plaintiffs point to additional intrinsic evidence—the prosecution
history of the '991 Patent—in support of their interpretation of "predetermined force."
Specifically, the plaintiffs assert that "the Patent Examiner recognized, used and fully
understood the term 'predetermined force' and that his understanding is fully consistent
with plaintiffs' position on claim interpretation." (Pls.' Br. in Supp. of Pls.' Renewed Mot.
for Summ. J. at 18.) To support this position, the plaintiffs cite a March 2, 2000, Office
Action from the U.S. Patent & Trademark Office received during prosecution of the original
application to which the '991 Patent claims priority, in which the Examiner stated in
rejecting the claims of the original application, "[a] predetermined force is variably exerted
by the slope of the cam surface and the speed of the feed screw." (Pls.' Br. in Supp. of
Pls.' Renewed Mot. for Summ. J. at 18.) However, the plaintiffs fail to cite any legal
authority holding that a patent examiner's comments in the prosecution history can

11

influence the interpretation of a claim element or claim term. Rather, "the prosecution history can often inform the meaning of the claim language by demonstrating how the *inventor* understood the invention." *Phillips*, 415 F.3d at 1317 (emphasis added).

In conclusion, the court believes it highly unlikely that one of ordinary skill in the art of spin-forming, after reading the specification and claims of the '991 Patent, would understand "predetermined force" to mean "forces caused by the controller's programmed setting of roller positions (i.e., path) against the tube and the related setting of forming times (i.e., work rates) to properly alter the diameter of the tube being formed." Rather, the court believes that one of ordinary skill in the art is more likely to contemplate the more direct, and less inferential meaning of "predetermined force" – *that a "force input" is utilized as part of the program or process for forming a particular tapered roller from a workpiece tube*. Hence, the court adopts this interpretation of "predetermined force" as its *Markman* interpretation. Neither the specification, the claims, nor the prosecution history of the '991 Patent clearly contradict this finding respecting the term "predetermined force."

### Reading Claims 1-4 and 13-17 on Defendants' Device

As stated previously, after determining the scope or meaning of Claims 1-4 and 13-17, the court must read the claims on defendants' accused device, literally and using the doctrine of equivalents, to ascertain whether infringement has occurred. To find infringement as a matter of law, the plaintiffs must establish that no genuine issue of material fact exists for trial, while the defendants must fail in showing that a genuine issue of material fact exists for trial. Likewise, to find non-infringement as a matter of law, the defendants must show that no genuine issue of material fact exists for trial, while the plaintiffs must fail in showing that a genuine issue of material fact exists for trial.

12

*Literal Infringement*

The All Elements rule holds that there is no infringement if one of the elements of the asserted patent claim is not found in the accused product or process. *See Johnston*, 885 F.2d at 1577-78. In the present case, if the broadest claims (i.e., independent Claims 1 and 13) do not read on defendants' device, then there is no literal infringement of any claim in the '991 Patent because dependent Claims 2-4 and 14-17 incorporate the limitations of independent Claims 1 and 13, respectively, while introducing additional limitations.

With reference to the claim chart of independent Claim 1 in plaintiffs' brief supporting the Renewed Motion for Summary Judgment, it appears that the only claim element in dispute is element "H," which includes the limitation "a controller for urging the outer surfaces of the rotatable rollers against the tube with a predetermined force . . . ." (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 26.) Because this claim element appears to be the only element in dispute, the court will refrain from reading the remaining elements in Claim 1 on the defendants' device; the determination of the existence or nonexistence of element "H" will be dispositive on the question of infringement.

Using the court's *Markman* interpretation of "predetermined force," the question becomes whether defendants' device utilizes a "force input" as part of the program or process for forming a particular tapered roller from a workpiece tube—an answer in the affirmative would entitle the plaintiffs to a finding of infringement of Claims 1-4 and 13-17 as a matter of law, while an answer in the negative would entitle the defendants to a finding of non-infringement of Claims 1-4 and 13-17 as a matter of law. With respect to independent Claims 1 and 13, all of the evidence put forth by the plaintiffs

13

establishes that the defendants' device does not utilize force inputs, but rather a combination of inputs of target positions for the rollers and rates at which the target positions are to be reached by the rollers as they are urged against the tube being formed. (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 26.)

As such, the court finds that the evidentiary record taken as a whole could not lead a rational trier of fact to find that the defendants literally infringed independent Claims 1 and 13 of the '991 Patent. Because Claims 2-4 and 14-17 ultimately depend upon independent Claims 1 and 13, respectively, Claims 2-4 and 14-17 also are not literally infringed by the defendants. Thus, the plaintiffs have not met their burden in proving that a genuine issue relating to literal infringement exists for trial; and, the defendants' Renewed Motion for Summary Judgment as to non-infringement of the '991 Patent should be granted in part inasmuch as their device does not literally infringe Claims 1-4 and 13-17 of the '991 Patent.

*Infringement Under the Doctrine of Equivalents*

Neither the plaintiffs nor the defendants addressed the issue of infringement under the doctrine of equivalents in their Renewed Motions for Summary Judgment. Consequently, this issue is preserved for trial.

*Validity/Invalidity of the '991 Patent*

35 U.S.C. § 282 provides:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of the other claims . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

14

Federal Circuit case law sets the standard for efforts to invalidate U.S. patents – a requirement of clear and convincing evidence. Specifically, the Federal Circuit has stated: "Under 35 U.S.C. § 282, one attacking the validity of a patent must present clear and convincing evidence establishing facts which lead to the legal conclusion that the patent is invalid." *Greenwood v. Hattori Seiko Co., Ltd.*, 900 F.2d 238, 241 (Fed. Cir. 1990), *see also*, *Texas Instruments v. U.S. International Trade Commission*, 988 F.2d 1165, 1177 (Fed. Cir. 1993); *WMS Gaming, Inc. v. Int'l. Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999).

However, the statutory presumption of validity of the '991 Patent does not preclude an award of summary judgment on the issue of invalidity to the defendants. If the defendants can show in the evidentiary record that no genuine issue of material fact relating to invalidity of the '991 Patent exists for trial, then they are entitled to summary judgment on the issue.

The defendants argue that the original application to which the '991 Patent claims priority does not contain a description of the term "predetermined force," and that the "predetermined force" limitation in the claims of the '991 Patent constitutes new matter under 35 U.S.C. § 132.[1] (Defs.' Br. in Supp. of Defs.' Renewed Mot. for Summ. J. at 15-16.) Furthermore, the defendants maintain that new matter appears in the claims of the '991 Patent, the patent is invalid for lack of written description in accordance with the first

---

[1].... No amendment shall introduce new matter into the disclosure of the invention. 35 U.S.C. § 132(a) (2005).

paragraph of  35 U.S.C. § 112.[2].  (Defs.' Br. in Supp. of Defs.' Renewed Mot. for Summ.

J. at 15-16.)

The Federal Circuit in *Turbocare Division of Demag Delaval Turbomachinery*

*Corp. v. General Electric Co.*, 264 F.3d 1111 (Fed. Cir. 2001), explained the relationship

of the new matter prohibition and the written description requirement:

> The written description requirement and its corollary, the new
> matter prohibition of 35 U.S.C. § 132, both serve to ensure that
> the patent applicant was in full possession of the claimed
> subject matter on the application filing date.   When the
> applicant adds a claim or otherwise amends his specification
> after the original filing date, . . .  the new claims or other added
> material must find support in the original specification.

*Id.* at 1118.  Where the newly added matter is not supported in the original specification,

claims containing the new matter are invalid for a lack of written description.  *See id.* at

1119-20.

To satisfy the written description requirement, the original disclosure "must

convey with reasonable clarity to those skilled in the art that [the inventor] was in

possession of the invention."  *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323

(Fed. Cir. 2000), (*quoting Vas-Cath, Inc. v. Mahrukar*, 935 F.2d 1555, 1563-64 (Fed. Cir.

1991)).  However, the specification "need not describe the claimed subject matter in exactly

the same terms as used in the claims; it must simply indicate to persons skilled in the art

that as of the [filing] date the applicant had invented what is now claimed."  *All Dental*

---

[2]The specification shall contain a written description of the invention, and of the manner
and process of making and using it, in such full, clear, concise, and exact terms as to enable any person
skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same,
and shall set forth the best mode contemplated by the inventor of carrying out his invention.  35 U.S.C. §
112, ¶1 (2005).

16

*Prodx, LLC v. Advantage Dental Products, Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002) (citations omitted).

The defendants argue that the Federal Circuit has consistently affirmed summary judgment rulings of invalidity based on the addition of new matter, and point to *Turbocare* as an instance where the Federal Circuit upheld such a ruling. (Defs.' Br. in Supp. of Defs.' Renewed Mot. for Summ. J. at 17.) In this court's view, the defendants' reliance on *Turbocare* is misplaced inasmuch as Turbocare's facts are significantly different than in the present case. In *Turbocare*, the patent applicant amended the specification of his application (which later issued and subjected to the invalidity charge), creating a dispute whether the applicant added new matter as a result of the amendment. The patent applicant in *Turbocare* did not file a continuation or continuation-in-part application; rather, the originally-filed specification relied on a *single, original filing date*. Thus, the dispute in *Turbocare* hinged on whether the patent applicant was in possession of the "new matter" as of the original filing date.

In the present case, the '991 Patent was filed as a continuation application, claiming priority to the filing date of the originally-filed or parent application (U.S. Patent Application No. 09/237,586, filed January 26, 1999, now abandoned). The defendants, citing *Turbocare*, suggest that because the '991 Patent was not filed as a continuation-in-part application, "the patentee cannot escape invalidity by relying on an alternative filing date for the new matter." (Defs.' Br. in Supp. of Defs.' Renewed Mot. for Summ. J. at 17.) However, the court notes that the patentee in *Turbocare* was not entitled to an alternative

17

filing date for the disputed new matter because a second application (a continuation or continuation-in-part) was not filed.

The defendants fail to present any legal authority that the '991 Patent should not be entitled to an alternative filing date (e.g., the August 1, 2000, filing date of the '991 Patent), despite the continuation application. Moreover, the court notes that the "Brief Summary of the Invention" section of the '991 Patent *explicitly recites* the term "predetermined force" several times. For example, the text in column 5, lines 7-8 of the '991 Patent recites "[a] controller urges the outer surfaces of the rollers against the tube with a predetermined force . . . " Other instances in which "predetermined force" may be found in the specification of the '991 Patent include column 5, line 51 and column 6, line 10.

Without any legal authority as to why the '991 Patent cannot rely upon its date of filing (i.e., August 1, 2000) to satisfy the requirements of first paragraph of 35 U.S.C. § 112, the court finds that the defendants have failed in showing that there is no genuine issue of material fact relating to invalidity of the '991 Patent. Therefore, the defendants are not entitled to summary judgment as to the issue of invalidity.

With regard to their Renewed Motion for Summary Judgment, the plaintiffs assert that the term "predetermined force" did not introduce "new matter" into the applications leading to the '991 Patent, and that the written description requirement is satisfied by the specification of the '991 Patent. (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 33.) According to the plaintiffs, the inclusion of the term "predetermined force" does not constitute new matter because the specification of the original application to which the '991 Patent claims priority provides support for the meaning of "predetermined

18

force." (Pls.' Br. in Supp. of Pls.' Renewed Mot. For Summ. J. at 36-37.) To bolster this position, the plaintiffs argue that the patent examiner in the parent or originally-filed application and the continuation application which later issued as the '911 Patent did not recognize the term "predetermined force" as new matter during prosecution of the original application. (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 33-35.)

Regardless, with respect to the patent Examiner's use of the term "predetermined force" during prosecution of the original application, the plaintiffs fail to present any legal authority holding that an examiner's comments during prosecution of a patent application are dispositive on the issue of whether the specification satisfies the requirements of the first paragraph of 35 U.S.C. § 112. As such, the court cannot infer from the examiner's comments that no genuine issue of material fact relating to the meaning of "predetermined force" exists for trial.

Further, in arguing that the original application to which the '991 Patent claims priority provides support for the meaning of "predetermined force," the plaintiffs point to several passages in the original application and the '911 Patent specification. (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 36-37.) Although there is some continuity between passages in the original application and passages in the '911 Patent, the court is not convinced that no genuine issue of material fact as to the meaning of "predetermined force." None of the cited passages in the specification of the original application explicitly recite "predetermined force," such that the court is able to decide as a matter of law that the specification of the original application conveys with reasonable clarity to those skilled in the art that the inventors listed in the original application were "in possession of the invention at the time of filing the original application" so as to satisfy the requirements of

19

the first paragraph of 35 U.S.C. § 112.  Rather, such a determination is better left for the finder of fact at trial.

*Enforceability/Unenforceability of the '991 Patent*

Because the defendants argued only for invalidity in response to plaintiffs' summary judgment motion for validity *and enforcement* of the '991 Patent, the plaintiffs submit that the defendants should be precluded from raising additional defenses at trial -, e.g., unenforceability for fraud on the patent office.  (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 38-39.)  In support, the plaintiffs cite *Celotex* for the proposition that "defendants' 'fail[ure] to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they]  . . .  bear the burden of proof at trial' entitles plaintiffs, as movants seeking summary judgment of validity and enforceability, to such summary judgment."  (Pls.' Br. in Supp. of Pls.' Renewed Mot. for Summ. J. at 38-39.)

The court disagrees with this strained reading of *Celotex*.  The court views the quoted passage in *Celotex* as contemplating the defendants' failure in identifying an existing, genuine issue of material fact for trial, rather than the consequences for the defendants' failure to respond to the "enforceability" issue respecting validity and enforceability.  Further, the plaintiffs have not persuaded this court by any cited authorities that defendants should be precluded from raising additional defenses (e.g., unenforceability) at trial.  Like the determination of validity or invalidity of the '991 Patent, the determination of enforceability of the '991 Patent is better left for the finder of fact at trial.

Now, therefore,

20

IT IS ORDERED that defendants' motion for summary judgment on non-infringement of the '911 Patent is granted in part;

IT IS FURTHER ORDERED that defendants' motion for summary judgment on invalidity of the '911 Patent is denied without prejudice;

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment on infringement of the '911 Patent is denied without prejudice; and

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment on validity and enforceability of the '911 Patent is denied without prejudice.

Dated at Milwaukee, Wisconsin, this 29th day of April, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE